UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RUSSELL BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 10823 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| K.R. MILLER CONTRACTORS INC. and | ) | |
| FIBRWRAP CONSTRUCTION CO., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this *pro se* suit against K.R. Miller Contractors Inc. and Fibrwrap Construction Co., Russell Brown alleges that he suffered discrimination based on his color and race, as well as retaliation for complaining of that discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Doc. 8. With discovery having closed, K.R. Miller and Fibrwrap move for summary judgment. Docs. 67, 70. Their motions are granted.

**Background**

Consistent with Local Rule 56.1(a)(3), K.R. Miller and Fibrwrap filed statements of undisputed facts along with their summary judgment motions. Docs. 72, 74. Local Rule 56.1(b)(3)(B) required Brown to respond to Defendants' Local Rule 56.1(a)(3) statements with evidentiary support on a paragraph-by-paragraph basis. *See* N.D. Ill. L.R. 56.1(b)(3)(B) (requiring a "concise response to the movant's statement that shall contain … a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon"). And Fibrwrap timely served Brown with a Local Rule 56.2 Notice, which explained in

1

detail the requirements of Local Rule 56.1. Doc. 78. (K.R. Miller's Local Rule 56.2 Notice appears to have been untimely, Doc. 82, but that error was harmless given Fibrwrap's timely Notice. *See Outlaw v. Newkirk*, 259 F.3d 833, 841 (7th Cir. 2001) (holding that the failure to warn a *pro se* plaintiff of the need to respond to a summary judgment motion with affidavits was harmless because the plaintiff suffered no prejudice); *Vesey v. Owens*, 2015 WL 3666730, at *1 n.2 (N.D. Ill. June 12, 2015) (holding that any error in a defendant's failure to serve a Local Rule 56.2 Notice was harmless "given that defendants Miller and Thomas served plaintiff with same … well before plaintiff's response to defendants' motions was due").)

Despite having been served with a timely Local Rule 56.2 Notice, Brown did not file a Local Rule 56.1(b)(3)(B) response. He did file an opposition brief, though some three weeks after the deadline and several days after K.R. Miller and Fibrwrap had filed their replies. Doc. 85. Brown's brief, even if liberally construed, does not include a Local Rule 56.1(b)(3)(B) response. Doc. 85 at 4. Moreover, even if the assertions in Brown's brief were treated as Local Rule 56.1(b)(3)(B) denials of factual assertions in Defendants' Local Rule 56.1(a)(3) statements, he does not support his denials with citations to the record, and so those denials would be disregarded in any event. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("[W]here a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial.").

Brown's status as a *pro se* litigant does not excuse his failure to comply with Local Rule 56.1(b)(3)(B). *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*,

2

423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant.") (citations omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure."). Given Brown's failure to comply with Local Rule 56.1(b)(3)(B), the facts set forth in Defendants' Local Rule 56.1(a)(3) statements are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

That said, the court is mindful that "a nonmovant's failure to respond to a summary judgment motion or failure to comply with Local Rule 56.1 … does not … automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884 (internal citations and quotation marks omitted). The court therefore will recite the facts in the Defendants' Local Rule 56.1(a)(3) statements, viewing the facts and the inferences therefrom as favorably to Brown as the record and Local Rule 56.1 allow. *See Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017). The court then will determine whether, on those facts, Defendants are entitled to summary judgment. At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

K.R. Miller was the general contractor for a construction project at a Chicago Public Schools job site. Doc. 74 at ¶ 6. While working at the site in July 2013, Brown was employed by Keyboard Enterprises, K.R. Miller's subcontractor. *Ibid*. K.R. Miller's superintendent, James Kerrigan, would tell Brown each morning what work had to be done at the site. *Id*. at ¶¶ 7-8. At some point in 2013 or 2014, Brown complained to K.R. Miller and to the owner of Keyboard Enterprises about racially derogatory comments that Kerrigan made to him. Doc. 72 at ¶¶ 21, 31-32. Brown is African-American. Doc. 73 at 2.

Years later, in July 2016, Brown began working at a different Chicago Public Schools job site, where K.R. Miller once again was the general contractor. Doc. 74 at ¶ 9. Fibrwrap, K.R. Miller's subcontractor, was charged with providing structural repairs to girders and joists at the site. *Id*. at ¶ 14. Brown was one of approximately ten people hired by Fibrwrap to perform that work. *Id*. at ¶¶ 9-10. Brown worked directly for and was paid by Fibrwrap. *Id*. at ¶¶ 16-17. During what turned out to be his three-day tenure with Fibrwrap, Brown saw Kerrigan twice. *Id*. at ¶ 22.

On July 27, 2016, Brown and another Fibrwrap employee, a white man named Frazer, were assigned several tasks as part of the night shift crew. Doc. 72 at ¶¶ 8, 13-14. Fibrwrap's foreman, Alberto Garcia, later checked on their work, "determined that they had made little to no progress," and reported the pair's lack of productivity to Fibrwrap's superintendent, Ted Ferrer. *Id*. at ¶ 15. Ferrer directed Garcia to send Brown and Frazer home after eight hours of work without overtime. *Id*. at ¶ 17. Garcia did so. *Id*. at ¶ 18. At no point did Garcia tell Brown or Frazer that they had been fired. *Id*. at ¶ 19.

Upon being informed that he would not be permitted to work overtime, Brown told Garcia that he believed the decision was due to the complaints he had lodged against Kerrigan in

2013.  *Id*. at ¶ 20.  Garcia was not aware of those complaints until Brown mentioned them.  *Id*. at ¶ 33.  Brown believes that Kerrigan called Ferrer and that the call led to Ferrer's decision to order Brown and Frazer to leave work early.  Doc. 74 at ¶ 21.  However, Ferrer never received a phone call or any other communication from Kerrigan regarding Brown and was unaware of Brown's prior interactions with Kerrigan when he made the decision to limit Brown and Frazer to eight hours of work on July 27.  Doc. 72 at ¶ 35.

Brown worked only six hours before voluntarily walking off the job site on July 27.  *Id*. at ¶¶ 22, 37-38.  He did not return.  *Ibid*.  Frazer also did not return to the job site, but testified that he did not believe that Garcia had fired him on July 27.  *Id*. at ¶¶ 24, 38.

## Discussion

The Seventh Circuit "generally use[s] the same standards to review discrimination and retaliation claims under § 1981 and Title VII."  *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017); *see also Lane v. Riverview Hosp.*, 835 F.3d 691, 695 (7th Cir. 2016) ("We analyze Title VII and § 1981 claims under the same framework.").  For convenience's sake, therefore, the court will principally draw on Title VII case law when evaluating Brown's claims.  *See Montgomery v. DePaul Univ.*, 2012 WL 3903784, at *8 (N.D. Ill. Sept. 7, 2012) (citing cases).

### I. Retaliation Claims

Title VII "prohibits retaliation against employees who engage in statutorily protected activity by opposing an unlawful employment practice or participating in the investigation of one."  *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (citing 42 U.S.C. § 200e-3(a)).  A Title VII retaliation claim thus "requires proof that [the plaintiff] … engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two."  *Ibid*.  This causal link must be satisfied with proof of "but-for" causation.  *Id*.

at 563; *see also Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) ("To prevail on a [Title VII] retaliation claim requires proof that the desire to retaliate was the but-for cause of the challenged employment action.") (internal quotation marks omitted). At the end of the day, however, a court evaluating a retaliation claim at summary judgment must engage in a "straightforward inquiry: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused [an adverse employment action]?" *Lord*, 839 F.3d at 563.

Even assuming that Brown suffered an adverse employment action for purposes of a retaliation claim and that K.R. Miller can be held liable for Fibrwrap's treatment of him, the retaliation claim fails. This is so because Brown has not adduced evidence sufficient for a reasonable juror to conclude that a "desire to retaliate for his statutorily protected activity" was the "but-for cause" of any adverse employment action he suffered in July 2016. *Ferrill*, 860 F.3d at 501; *see also Lord*, 839 F.3d at 563.

To establish the necessary causal link, a plaintiff ordinarily must show that the decisionmaker who imposed the adverse employment action was aware of his protected activities. *See Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 698 n.6 (7th Cir. 2017) ("[I]n order to be liable for Title VII retaliation, the employer must have had actual knowledge of the protected activity at issue.") (internal quotation marks omitted); *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 351-52 (7th Cir. 2009) (noting that "a plaintiff must generally provide evidence that the decisionmaker acted for a prohibited reason to establish a prima facie case of retaliation"); *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1121-22 (7th Cir. 2009) (holding that the plaintiff "failed to show that there is a causal connection between [his] suspension and his statutorily protected activity" because he did not show that the

individual who suspended him was aware of his protected conduct). Brown cannot make that showing. Both Fibrwrap employees involved in the decision to limit the number of hours Brown was permitted to work on July 27, 2016—Garcia and Ferrer—aver that they were unaware of Brown's prior complaints against Kerrigan when they decided to take action against Brown and Frazer. And Brown has adduced no evidence to counter or undermine their averments.

There is an exception to the requirement that a plaintiff show that a decisionmaker's impermissibly retaliatory motive resulted in an adverse employment action: where the plaintiff can show that a biased *non*-decisionmaker used "a formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 570 (7th Cir. 2017) (internal quotation marks omitted). This "cat's paw" theory of liability is most commonly deployed when a "biased subordinate" or "non-decision-making employee with discriminatory animus provided factual information or input that may have affected [an] adverse action." *Miller v. Polaris Labs., LLC*, 797 F.3d 486, 490 (7th Cir. 2015). The court will assume in Brown's favor that this theory of liability would apply if Kerrigan, an employee of K.R. Miller, had influenced the employment decisions of its sub-contractor, Fibrwrap. *See Metzger*, 519 F.3d at 680-81 (when evaluating a Title VII retaliation claim, examining whether the "retaliatory animus" of an Illinois Firearms Services Bureau employee had improperly influenced an audit performed by an independent agency).

"To survive summary judgment on [a cat's paw theory], the plaintiff must provide evidence that the biased [individual] actually harbored discriminatory animus against the victim of the subject employment action, and evidence that the biased [individual's] scheme was the proximate cause of the adverse employment action." *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 711 (7th Cir. 2017) (internal quotation marks omitted); *see also Johnson v. Koppers, Inc.*,

726 F.3d 910, 914 (7th Cir. 2013) (same). However, Brown has adduced no evidence that would permit a reasonable juror to find that anything Kerrigan did was the proximate cause of Fibrwrap's decision to deny him overtime. Ferrer—the individual who determined that Brown and Frazer's lack of productivity should be punished by limiting the hours they could work on July 27—avers without contradiction that he never received a phone call or any other communication from Kerrigan regarding Brown. (Brown's belief that Kerrigan placed such a call—absent any supporting evidence—cannot by itself forestall summary judgment. *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 548 (7th Cir. 2011) ("If the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed.").) And there is no suggestion in the record that Kerrigan influenced in any way Garcia's decision to report Brown's lack of productivity to Ferrer. It follows that Brown cannot prevail on his retaliation claim under the "cat's paw" theory of liability. *See Grant*, 870 F.3d at 570 (holding that the plaintiff could not "survive summary judgment on a cat's paw theory" where he failed to rebut the defendant's evidence that the employee allegedly harboring retaliatory animus did not have "any input or influence" over the defendant's decision to take adverse action against the plaintiff); *Metzger*, 519 F.3d at 682 (holding that the plaintiff's cat's paw theory failed because she did not adduce evidence that the biased non-decisionmaker's comments actually influenced the decisionmaker).

## II.     Race and Color Discrimination Claims

Brown's color and race discrimination claims fail as well. To proceed with a Title VII discrimination claim, Brown must show that he suffered a "materially adverse employment action." *Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1068-69 & n.9 (7th Cir. 2012). If Brown can make this showing—and the court will assume, for the purposes of this motion, that he has—

8

then the court must consider whether the evidence, considered as a whole, would allow a reasonable juror to conclude that his color or race caused the adverse employment action. *See David v. Bd. of Trustees of Cmty. Coll. Dist.*, 846 F.3d 216, 224 (7th Cir. 2017); *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Brown nowhere suggests that he intends to raise a discrimination claim (which almost certainly would be untimely) stemming from Kerrigan's actions in 2013. Docs. 8, 85. And there is no indication whatsoever in the summary judgment record that Brown suffered discrimination based on his race or color while employed at Fibrwrap in 2016. Neither his race nor his color were mentioned in conjunction with any action taken toward him during the three days he worked for Fibrwrap. Brown received the same punishment for allegedly insufficient work as Frazer, who is white. And there is no suggestion that Kerrigan, the only individual accused of displaying racial animus in this case, played any role in Fibrwrap's decision to discipline Brown and Frazer. It follows that summary judgment is warranted on Brown's color and race discrimination claims.

## Conclusion

For the foregoing reasons, Defendants' summary judgment motions are granted. Judgment will be granted in favor of Defendants and against Brown.

June 13, 2018                          _____
                                                                 United States District Judge